Ricky Dean Perryman was indicted for the offense of burglary in the third degree in violation of § 13A-7-7(a), Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" (R.241), and the trial judge sentenced the appellant to six (6) years' imprisonment in the penitentiary. Further, the trial judge, on application of the appellant, denied the request for probation and ordered appellant to pay $25.00 to the Alabama Crime Victims Compensation Fund.
Mr. Doffie Webb lived in a mobile home in Shelby County during the week. He left home for work on the morning of December 18, 1986, at approximately 6:45 a.m. At about 5:15 p.m. that same day, he returned to find several items missing from his home, including the following: a television set, a coffee pot, a shaving kit, some clothes, a bottle of whiskey, and some cigarettes. (R.23).
A second mobile home, the home of Leslie and Mary Frances Scoggins, was directly in front of Webb's home. On December 18, 1986, several people, including the appellant, Ricky Dean Perryman, were visiting the Scoggins home.
The following day, December 19, Investigator James Walters of the Shelby County Sheriff's Department commenced an investigation of the alleged burglary, questioning some of those who were at the Scoggins home on the date in question. On December 23, 1986, Investigator Walters spotted the appellant parked on the side of Highway 280 in Shelby County. Investigator Walters advised the appellant that he *Page 974 
wished to speak with him. The appellant voluntarily agreed to follow Investigator Walters to the Shelby County sheriffs substation. Upon arriving, Investigator Walters advised the appellant that he wished to speak to him about the burglary of Mr. Webb's mobile home. Investigator Walters then advised the appellant of his Miranda rights, and the appellant duly signed a copy agreeing and waiving the same. (R.15859).
Investigator Walters then read the appellant a statement advising him that he could waive his constitutional rights, if he so chose, and give a statement at that time. Again, the appellant signed a copy of this and gave a statement, admitting that he had been in the mobile home on December 18, 1986, and that he took the property in question. The appellant took Investigator Walters to the location of the television set, which was seized and later returned to Webb. None of the other property was recovered.
The appellant was initially indicted in February of 1987 by a Shelby County grand jury, but that indictment was dismissed because Mr. Webb's name was incorrectly spelled. On May 27, 1988, a second Shelby County grand jury entered an indictment against the appellant for burglary in the third degree. Ala. Code § 13A-7-7(a) (1975). A petit jury thereafter found the appellant "guilty as charged in the indictment." (R.241).
 I
The appellant presents for review three issues: (1) whether a juror's bias is proper grounds for reversal; (2) whether the trial court erred in admitting into evidence the appellant's signed confession; and (3) whether the trial judge should have given a requested instruction on the State's burden in proving "waiver of rights" surrounding the appellant's confession.
The appellant first contends that the response of one juror to questions posed to the jury venire disclosed strong bias on the part of that juror which entitled him to strike that juror for cause. The relevant part of the voir dire examination is set out as follows:
"MR. HEAD: . . . As I say, I expect that either Deputy Walters or Deputy Fox will testify. Would any of you tend to believe the word of a police officer or a deputy, someone with law enforcement, or a State's witness, over that of the defendant or over that of any other person?
(A prospective juror raised her hand.)
"MR. HEAD: All right. And your name is?
"PROSPECTIVE JUROR PARKER: Annelle Parker.
"MR. HEAD: Annelle Parker?
"PROSPECTIVE JUROR PARKER: Um-hum.
"MR. HEAD: And you're telling us that you would tend to believe what a police officer said or a law enforcement officer said over someone else or over —
"PROSPECTIVE JUROR PARKER: Over the other side.
"MR. HEAD: Okay.
"Judge, I would, in that event, ask that Mrs. Parker be excused for cause.
"THE COURT: I'll rule on that in a moment.
(Voir dire examination of the jury continued by Mr. Head.)
". . . .
"MR. HEAD: I expect that the evidence will show that some of the persons involved had been drinking alcoholic beverages. There may be some evidence that some of these people were intoxicated. Do any of you have some strong religious ground or moral ground and believe that the drinking of alcoholic beverages is wrong?
(Prospective Juror Parker raised her hand.)
"MR. HEAD: Okay.
"PROSPECTIVE JUROR PARKER: I do. My husband was killed by a drunk driver.
(Voir dire examination of the jury venire concluded by Mr. Head.)
"THE COURT: Would you approach the bench just a moment, please. *Page 975 
(Off-the-record discussion among the Court and counsel at the bench.)
"THE COURT: Mrs. Parker, would you come up to the front, please.
"Ladies and gentlemen, I'm going to put the rest of you in recess, and you know the reason why. Let's make it about a twenty-minute recess. Come back at twenty till ten, and we'll strike the jury.
(Jury venire not present except Mrs. Annelle Parker. 10:21 a.m.)
"THE COURT: Go ahead.
"MR. OWENS: Mrs. Parker, you are aware that in a criminal case, the State has the burden of proof?
"PROSPECTIVE JUROR PARKER: Right.
". . . .
"MR. OWENS: If that investigation (sic) were questioned — in other words, if perhaps the defense questioned him regarding something he left out or something he didn't do and that caused a question in your mind, could you weigh his testimony —
(Prospective Juror Parker nodded in the affirmative.)
"MR. OWENS: — as the same as you would weigh anybody else's?
"PROSPECTIVE JUROR PARKER: Anybody else's. I certainly could. That's why I'm wondering. But between the two. I mean I just believe that police officers —
"MR. OWENS: You have faith in the police people?
"PROSPECTIVE JUROR PARKER: I certainly do in what they bring before the courts.
"MR. OWENS: But if their testimony was drawn into question, you could draw it into question in your own mind?
"PROSPECTIVE JUROR PARKER: Right. Right.
"THE COURT: You're not saying, are you —
"PROSPECTIVE JUROR PARKER: I'm not —
"THE COURT: — or are you saying that if a witness is a police officer, that you're going to believe him over everybody else —
"PROSPECTIVE JUROR PARKER: No.
"THE COURT: — no matter what the evidence —
"PROSPECTIVE JUROR PARKER: No.
". . . .
 "THE COURT: Are you saying you could be fair? "PROSPECTIVE JUROR PARKER: I could.
"THE COURT: And you could listen to all the evidence and render —
"PROSPECTIVE JUROR PARKER: Right.
"THE COURT: — a verdict? And you would not bring any prejudice into the case?
"PROSPECTIVE JUROR PARKER: No, sir.
"THE COURT: You would bring an open mind —
"PROSPECTIVE JUROR: Right.
"THE COURT: — into the case?
". . . .
"MR. HEAD: And I don't mean to embarrass you or anything. But, still, all things being equal, and if there was disputed testimony, would you tend to believe the word of a police officer, due to the fact that he is a police officer and that he investigated the case, over and above what anyone else would say and, for example, the defendant might say, simply because that person is a police officer?
"PROSPECTIVE JUROR PARKER: I'm afraid I would, and especially if there's alcohol involved.
"MR. HEAD: Okay.
"PROSPECTIVE JUROR PARKER: I cannot — I mean I cannot see — I mean this has really been in my mind, how a person that is drunk really knows what's going on, I mean, because they are — they're out of it.
"MR. HEAD: And you're saying that you had a husband that was killed — *Page 976 
"PROSPECTIVE JUROR PARKER: By a drunk driver. He was run off the road.
"MR. HEAD: And you have a feeling of —
"PROSPECTIVE JUROR PARKER: And I also-And the other day I had a sister-in-law that was raped, so, I mean — And we have had State-we've worked with the State, and we've worked with the — we've just been in court.
"MR. HEAD: And you — But you have a strong feeling against people that drink alcohol, drink alcoholic beverages?
"PROSPECTIVE JUROR PARKER: I'm afraid I do.
". . . .
"THE COURT: What we're concerned with is whether —
"PROSPECTIVE JUROR PARKER: Right.
"THE COURT: — you would be fair.
"PROSPECTIVE JUROR PARKER: Right. I can sit on that jury, and I can listen with an open mind.
"THE COURT: Okay.
"PROSPECTIVE JUROR PARKER: I really can.
"THE COURT: Let me follow that up with perhaps one last question, Mrs. Parker. I know you think it's wrong to drink and many bad things happen from drinking.
"PROSPECTIVE JUROR PARKER: Sure.
"THE COURT: I'm not going to dispute that with you.
"PROSPECTIVE JUROR: That's right.
"THE COURT: But the question is whether that feeling is going to make you mad or prejudiced so that if you hear any evidence about somebody drinking, then automatically you're going to rule against him or hold a grudge against him or —
"PROSPECTIVE JUROR PARKER: I don't believe —
"THE COURT: — inject the feelings that you have about your husband's case into this case.
"PROSPECTIVE JUROR PARKER: No.
"THE COURT: You will not do that?
"PROSPECTIVE JUROR PARKER: I will try not to. I really would.
"THE COURT: Do you think it would be difficult for you to do that?
"PROSPECTIVE JUROR PARKER: No. I will not let it.
"THE COURT: Okay. Thank you, ma'am. If you would come back at twenty till with the others.
(Prospective Juror Parker left the courtroom.)
"THE COURT: What does the State say?
"MR. OWENS: The State moves that she is an appropriate juror. I mean, it's obvious that she has some partialities, but every juror sitting out there has some partialities. That's why we have the strike system.
"THE COURT: I don't really feel that she has demonstrated that she has any bias.
"MR. OWENS: I couldn't find any.
"THE COURT: Of course, whether or not a juror might believe a policeman over somebody else, that does not mean that that person has a bias or does not have a bias. The test, of course, is whether the person will judge all of the evidence fairly. And it's a somewhat unfair question because you're asking that question out of context, and you're asking it in a vacuum. I really don't believe this juror is biased or would be unfair in the case. So unless the State consents to the motion —
"MR. OWENS: No, the State will not, Judge.
"THE COURT: — I deny it. I think she's a perfectly fine juror to sit on this case.
"MR. HEAD: And the defendant would except to that ruling."
(R.10-20). Therefore, the appellant's contention that Ms. Parker is biased is based on two grounds: (1) Her statement that, "all things being equal," she would believe the word of a law enforcement officer over *Page 977 
someone else; and (2) her expression of doubt as to whether she could fairly vote her conscience if alcohol was involved.
 A
The grounds by which one may strike a prospective juror for cause are set out in § 12-16-150, Code of Alabama 1975. The relevant part of that statute for this case is stated as follows: "It is good ground for challenge of a juror by either party [t]hat he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict." Ala. Code § 12-16-150(7) (1975) (emphasis added). Thus, the issue before this court is whether the prospective juror had such a "fixed opinion" as to interfere with her ability to render a fair verdict.
This court has refused to expand the meaning of "fixed opinion" except in extreme cases. In Nobis v. State,401 So.2d 191, 197 (Ala.Cr.App.), cert. denied,401 So.2d 204 (Ala. 1981) this court stated: "A 'fixed opinion' which will bias a verdict is one that is a conviction or prejudgment, a strong or deep impression which closes the mind of a juror and combats the testimony and resists its force." (Citations omitted.) Such a "strong or deep impression" or "opinion must be so fixed as that it would bias the verdict a juror would be required to render." Nobis, 401 So.2d at 198, quoting Tidmore v. City of Birmingham,356 So.2d 231, 234 (Ala.Cr.App. 1977), cert. denied,356 So.2d 234 (Ala. 1978). See also Barbee v. State,395 So.2d 1128, 1130-31 (Ala.Crim.App. 1981). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvinv. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643,6 L.Ed.2d 751 (1961). But see Langham v. State, 494 So.2d 910,913 (Ala.Cr.App. 1986) (the defendant must show "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality").
 B
Further, the finding of the trial judge is given great weight in considering the voir dire of the jury venire. Thomas v.State, 539 So.2d 375, 388 Ala.Cr.App. 1988),affd, 539 So.2d 399 (Ala. 1988). "[T]he finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror, taken as awhole, he entertained a fixed opinion which would bias his verdict." (Emphasis added.) Nobis, 401 So.2d at 197. Thus, even though a prospective juror admits to a potential bias, if further voir dire examination reveals that the juror in question can and will base his decision on the evidence alone, then a trial judge's refusal to grant a motion to strike for cause is not error. See Kinder v. State,515 So.2d 55, 61 (Ala.Cr.App. 1986) (juror stated that "he would not allow his opinion to influence his decision"); Mahan v.State, 508 So.2d 1180, 1181 (Ala.Cr.App. 1986) (no jurors responded when asked if they would have a problem with an instruction that they were to presume defendant innocent until proven guilty); Johnston v. State, 497 So.2d 844, 849
(Ala.Cr.App. 1986) (a juror "is not disqualified if he states that he can find a true verdict on the evidence alone");Stringfellow v. State, 485 So.2d 1238, 1241
(Ala.Cr.App. 1986) (juror stated that she would "try real hard" to base her verdict on the evidence in the case).
In the case sub judice, the juror in question clearly stated she would have reservations about believing the appellant if his testimony was contradictory to any testimony given by law enforcement officers. She also expressed doubt about her ability to render an honest verdict if alcohol was involved. But, upon further questioning by the trial judge, the defense attorney and the prosecutor, the juror stated that she would not allow her personal beliefs to interfere with her decision as to the guilt or innocence of the appellant.[1]
On these declarations, the trial judge found her to be a reliable juror and denied *Page 978 
the appellant's motion to strike for cause. The decision of the trial judge was not an abuse of discretion. Thomas, 539 So.2d at 388.
 II
The appellant next contends that an inculpatory statement made by the appellant and admitted into evidence was error. The appellant contends (A) that the Shelby County Sheriff's Department elicited an inculpatory statement in violation of his "constitutional rights," (B) that the State has the burden in a criminal trial to prove the statement was given freely and voluntarily, and (C) that, since the statement was unconstitutionally elicited and the State failed to meet its burden, the trial court's admission of this statement was error.
The appellant claims that the statement was made in an inherently coercive environment, and that, because of his limited intellectual abilities, he was incapable of waiving his constitutional rights. The record reveals that the statement was taken in a small room (10 feet by 10 feet) which contained a desk and filing cabinets. Present in the room at the time the statement was taken were the appellant and two armed deputies. The appellant argues that these facts, coupled with the fact that the appellant had only a first grade education and could not read, created a coercive atmosphere, and, that as a result, the statement given by the appellant was involuntary and thus inadmissible.
This court has addressed this issue on numerous occasions.See Bush v. State, 523 So.2d 538, 554 (Ala.Cr.App. 1988); Griffin v. State, 500 So.2d 83, 87-88
(Ala.Cr.App. 1986); Wright v. State, 489 So.2d 701,702-03 (Ala.Cr.App. 1986). See also Ex parte Callahan,471 So.2d 463, 464-67 (Ala. 1985) (discussing the United States Supreme Court's decisions on confessions); Ex parteShula, 465 So.2d 452, 453-55 (Ala. 1985) (discussing the "Wigmore" or "orthodox" rule and the New York rule). The applicable law was most recently restated by this court inBush v. State, 523 So.2d 538, 554 (Ala.Cr.App. 1988), as follows:
 "The oft-stated rule is that a confession is prima facie involuntary and inadmissible, and the State must show voluntariness and a Miranda predicate in order for it to be admitted. [Citations omitted.] Whether there was a waiver of the right to remain silent and the right to counsel and whether it was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of accused — the totality of the circumstances. [Citations omitted.] The question of whether a confession was voluntary is initially to be determined by the trial court. Ex parte Singleton, 465 So.2d 443 (Ala. 1985). Thereafter, the voluntariness as affecting the credibility and weight to be given any statement that an accused has made is a determination for the jury. Id. The finding of the trial court will not be disturbed on appeal unless it appears contrary to the great weight of the evidence or is manifestly wrong. [Citations omitted.] Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. [Citations omitted.] The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. [Citations omitted.] The fundamental requirements for voluntariness are that the court must conclude, in order to find a defendant's confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him. [Citations omitted.]"
We hold that, based on the "totality of the circumstances," the State met its burden of proving the statement was knowingly, intelligently and voluntarily made. *Page 979 
Therefore, the decision of the trial judge to admit the statement was not error.
The State showed that the appellant went to the Sheriff's Department substation on his own free will and volition. In fact, he drove in his own car. The State further showed that the appellant was read his Miranda warnings and was read a statement advising him he could waive his constitutional rights and make a statement at that time. He signed written copies of both statements (i.e., the Miranda warnings and the waiver) as read to him by Investigator Walters.
While the appellant may be illiterate, he stated on cross-examination, "I'm pretty educated in my own way. . . ." Therefore, the trial judge could observe the appellant and determine that he was capable of understanding his rights as they were read to him. The appellant's signature on the written waiver and his voluntary statement which followed were sufficient to constitute "an independent and informed choice." We find no coercion, threat or intimidation. Therefore, this court finds that the admission of the statement at issue was proper.
 III
Lastly, the appellant contends that it was error for the trial judge to refuse to give his written requested charge to the jury regarding the appellant's confession. The charge in question was as follows:
 "The Court charges the jury that any extra-judicial statements of guilt by the Defendant are presumed involuntary, and the burden is on the State to prove a valid waiver before such may be considered. The credibility and weight to be given such statement(s) are matters exclusively within the province of the jury."
(Vol. I, R. 014).
Section 12-16-13, Code of Alabama 1975, states, inter alia, that "[t]he refusal of a charge, though a correct statement of the law, shall not be cause for a reversal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge. . . . " See Lambeth v.State, 380 So.2d 923, 924-25 (Ala. 1979); Dillard v.State, 371 So.2d 947, 948 (Ala. 1979); Bogan v.State, 529 So.2d 1029, 1031-32 (Ala.Cr.App. 1988);Harris v. State, 513 So.2d 79, 82-83 (Ala.Cr.App. 1987).
In the case sub judice, the trial judge's oral charge to the jury was as follows:
 "There was evidence in the case of a statement made by the defendant to Investigator Jim Walters. With regard to this alleged statement, I charge you that you may consider all of the facts and circumstances surrounding the taking of the alleged statement in determining the weight and credibility, if any, which you give the alleged statement. In exercising your exclusive prerogative of determining the credibility of the evidence or the weight to which the evidence is properly entitled, you shall consider the circumstances under which the alleged statement was obtained, the appliances by which it was supposedly elicited, including the situation and mutual relations of the parties. It is you who determines the weight or credibility of this evidence, and you may disregard an alleged statement which you find unworthy of belief or to which you entertain a reasonable doubt as to its truth."
(R. 230-31). The appellant's requested charge sought to advise the jury that it must determine if the prosecution met its burden as to the statement in question and to determine the weight to be accorded that statement. The trial judge's oral charge "substantially and fairly" met this request, even though not by identical language. See Ala. Code § 12-16-13
(1975).
Even assuming, for argument's sake, that appellant's requested charge had better language or was more preferable in terminology to the trial judge's oral charge, this court will not find error in the trial judge's instruction. "Such a rule would elevate technicality above common sense and fairness to society." Harris v. State, 513 So.2d 79, 83
(Ala.Cr.App. 1987), quoting Reed v. State, 43 Ala. App. 419,423, 191 So.2d 258 (1966). *Page 980 
As a result, we find no error in the trial judge's instruction to the jury.
For the reasons stated the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The appellant in his brief relies partly on Ex parteBeam, 512 So.2d 723 (Ala. 1987). The case sub judice is distinguishable, since, in Beam, the prospective juror was not sure whether she could put her beliefs about alcohol aside in rendering a verdict.