[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 283 
The appellant, Terry Lee Ponder, was convicted of murdering Mary Angela Vincent and Carol Quick Myrick, made capital because two or more persons were killed as the result of one cause of conduct. See § 13A-5-40(a)(10), Code of Alabama 1975. The jury, by a vote of eight to four, recommended that the appellant be sentenced to life in the penitentiary without the possibility of parole. The trial court overrode the jury's recommendation and sentenced the appellant to death by electrocution.
The state's evidence tended to show that on October 27, 1993, the appellant shot and killed Mary Angela Vincent and Carol Quick Myrick. Dr. Joseph Embry, the state's medical examiner, testified that both victims died as a result of gunshot wounds to the head. Steve Wayne Ponder, the appellant's brother, testified that he witnessed the appellant shoot the victims and that he helped the appellant dispose of the bodies. Steve Ponder testified that he, the appellant, Vincent, and Myrick were driving around in Myrick's mother's car on the day of the shootings. Vincent and the appellant were arguing, and the appellant shot both Vincent and Myrick. Steve Ponder testified that the appellant threatened him and told him to drive. He drove to a pond, where the appellant threw the gun he had used to shoot the victims into the water. Steve Ponder testified that they then went to their mother's house, where they wrapped the victim's bodies in sheets, put a plastic garbage bag over each of their heads, and tied concrete blocks to the bodies. They then took the bodies to Phillips Bridge and threw the bodies from the bridge into the water. The bodies were discovered after Steve Ponder related this information to police.
 I
The appellant contends, and the State of Alabama agrees, that this case must be remanded to the Circuit Court for Cullman County so that the trial court can set aside the appellant's death sentence and sentence the appellant to life imprisonment without the possibility of parole. The state admits that the trial court, when fixing the sentence at death, erroneously found as the only aggravating circumstance mandating a sentence of death the fact that two or more people were killed during one course of conduct. § 13A-5-40(a)(10).
The aggravating circumstances that will support a death sentence are found in § 13A-5-49, Code of Alabama 1975. The death of two or more people during one course of conduct is not a statutory aggravating circumstance contained in this section. As section 13A-5-47 states:
 "In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances. . . ."
The trial court admitted when fixing the appellant's sentence at death that the only aggravating circumstance it found to exist was not contained in § 13A-5-49. However, the court stated that because the crime was defined as a capital offense in § 13A-5-40(a)(10), it was finding that the death of two or more people as the result of one course of conduct was an aggravating circumstance that would uphold the imposition of the death sentence. This, however, is not the law.
As this court stated in Ex parte Woodard, 631 So.2d 1065
(Ala.Cr.App. 1993), cert. denied, 662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994): *Page 284 
"Under our current statutory scheme, a 'capital offense' is '[a]n offense for which a defendant shall be punished by a sentence of death or life imprisonment without parole according to the provisions of . . . Article [2 of Chapter 5 of Title 13A].' § 13A-5-39(11) (emphasis added [in Woodard]). The specific forms of conduct that the legislature has declared to be 'capital offenses' are set forth in § 13A-5-40 (Supp. 1993). Each of these offenses consists of an intentional murder coupled with some other element, e.g., that the murder was committed during the commission of certain other felonies (kidnapping, robbery, rape, sodomy, burglary, sexual abuse, and arson), § 13A-5-40(a)(1), (2), (3), (4), (8), and (9); that the murder was committed for pecuniary gain, § 13A-5-40(7); and that the victim was a law enforcement officer, § 13A-5-40(5). Although this 'other element' is sometimes referred to as an 'aggravating circumstance,' Kuenzel v. State, 577 So.2d 474,490 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991),Crowe v. State, 485 So.2d 351, 367 (Ala.Cr.App. 1984), reversed on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied,477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), the § 13A-5-40
'other element' should not be confused with the statutory aggravating circumstances set out in § 13A-5-49.
"A number, but not all, of the § 13A-5-40 capital offenses include as 'other elements' conduct that clearly corresponds to one or more of the aggravating circumstances specified in §13A-5-49. For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder during a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(1), parallel the aggravating circumstance that '[t]he capital offense was committed while the defendant was engaged . . . [in a] rape, robbery, burglary or kidnapping,' § 13A-5-49(4). However, other capital offenses, such as intentional murder during a sodomy, § 13A- 5-40(a)(3), intentional murder during sexual abuse, § 13A-5-40(a)(8), the intentional murder of two or more persons by one act or course of conduct, § 13A-5-40(a)(10), and the offense of which the petitioner is accused, the intentional murder of a child, §13A-5-40(a)(15), do not parallel any aggravating circumstance enumerated in § 13A-5-49. See Ex parte Kyzer, 399 So.2d 330,334 (Ala. 1981) (recognizing as 'an anomaly' in the former capital offense statutes that 'there [wa]s a corresponding aggravating circumstance for most, but not all, of the aggravated offenses').
"The fact that § 13A-5-40(a)(15) does not parallel a statutory aggravating circumstance does not render that section 'contradictory and in diametric opposition to the legislative intent which underlies the purpose of the statute as a whole.' To the contrary, the legislature has clearly classified certain crimes as 'capital offenses,' § 13A-5-40, and it has set the minimum punishment for such crimes as imprisonment for life without parole, see §§ 13A-5-45(f); 13A-5-46(e)(1). This is no different from the legislature's classifying other offenses for purposes of punishment and establishing minimum and maximum punishments for each classification. See §§ 13A-5-3; 13A-5-6;13A-5-7. A greater punishment — death — may be imposed on a defendant convicted of a capital offense, but only if one or more of the aggravating circumstances enumerated in § 13A-5-49
is found to exist and that aggravating circumstance(s) outweighs any mitigating circumstance(s) that may exist. See §§13A-5-45(f); 13A-5-46(e); 13A-5-47(e). Cf. Ex parte Kyzer, 399 So.2d at 334 (under former capital offense statutes, death sentence could not be upheld where defendant was convicted of the intentional murder of three persons in one course of conduct, but no statutory aggravating circumstances existed);Holladay v. State, 549 So.2d 122, 133 (Ala.Cr.App. 1988) (death sentence upheld where defendant was convicted of the intentional murder of three persons in one course of conduct and two § 13A-5-49 aggravating circumstances existed), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012,110 S.Ct. 575, 107 L.Ed.2d 569 (1989)." *Page 285 
631 So.2d at 1070-71. (Emphasis original.) Cf. Edwards v.State, 515 So.2d 86 (Ala.Cr.App. 1987) (death of two or more persons as a result of one course of conduct recognized, afterEx parte Kyzer, 399 So.2d 330 (Ala. 1981), as a nonstatutory aggravating circumstance; however, in Edwards a statutory aggravating circumstance to uphold the sentence of death was also present).
As this court stated in Bush v. State, [Ms. CR-90-1652, December 1, 1995] ___ So.2d ___, ___ (Ala.Cr.App. 1995): "A trial court may consider only those aggravating circumstances listed in § 13A-5-49 in fixing the death penalty. Clisby v.State, 456 So.2d 99 (Ala.Cr.App. 1983); Berard v. State,402 So.2d 1044 (Ala.Cr.App. 1980)."
The appellant's sentence of death is not based on the law and therefore cannot stand. This cause is remanded to the Circuit Court for Cullman County for that court to vacate the appellant's sentence of death by electrocution and to fix the appellant's sentence at the only sentence provided by law, i.e., life in the penitentiary without the possibility of parole. Woodard.
Although we are remanding this case for resentencing, in the interest of judicial economy we will address the remaining issues raised in this court. However, we will not address any issues relating to the death penalty because our remand of this case renders those issues moot. We further note that because the death penalty has been vacated, this court not obligated to search the record for plain error. Rule 45A, Ala. R. App. P. Thus, any issues raised on appeal must be correctly preserved before this court can review them.
 II
The appellant contends that his constitutional rights were violated when he was absent from two pretrial hearings — one on March 11, 1994, and another on August 12, 1994. On both occasions appellant's counsel was present.
Initially, we note that there was no objection to the appellant's absence and, in fact, the attorneys representing the appellant stated for the record at each hearing that the appellant's presence was waived because they did not think his presence was necessary. Both hearings apparently dealt with pretrial discovery.
As this court, in Harris v. State, 632 So.2d 503
(Ala.Cr.App. 1992), aff'd, 632 So.2d 543 (Ala. 1993), aff'd,513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), stated:
 "The court in Proffitt v. Wainwright, [685 F.2d 1227 (11th Cir. 1982), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983)], acknowledged in a footnote that in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), 'which was a capital case, [the Court] stated that the sixth amendment privilege of confrontation could "be lost by consent or at times even by misconduct." Snyder v. Massachusetts, 291 U.S. at 106, 54 S.Ct. at 332.' Proffitt v. Wainwright, supra, at 1257, n. 43. See also State v. Davis, 290 N.C. 511, 227 S.E.2d 97, 110 (1976) ('[t]he strict rule that an accused cannot waive his right to be present at every stage of his trial upon an indictment charging a capital felony, State v. Moore, 275 N.C. 198, 166 S.E.2d 652 (1969), is not extended to require his presence at the hearing of a pretrial motion for discovery when he is represented by counsel who consented to his absence, and when no prejudice resulted from his absence'). See also State v. Piland, 58 N.C. App. 95, 293 S.E.2d 278 (1982), appeal dismissed, 306 N.C. 562, 294 S.E.2d 374 (1982) ('[t]he [capital] defendant in this case has not demonstrated any prejudice to him by his absence from a part of the hearing. The evidence elicited was not disputed and there has been no showing that it would have been different had the defendant been present').
 "Thus, if the appellant's presence . . . would have been useless to [his] defense and if the [pre-trial] hearing was not considered to be a 'critical stage' of [his] trial, then we can find no error in the appellant's absence from the hearing."
632 So.2d at 512 (Emphasis original.) See also Dobyne v. State,672 So.2d 1319 (Ala.Cr.App. 1994); Ex parte DeBruce,651 So.2d 624 (Ala. 1994). *Page 286 
 III
The appellant further contends that he was denied a fair trial because of alleged prosecutorial misconduct. Specifically, he contends that the prosecutor in his closing statement commented on the appellant's right to remain silent, bolstered the credibility of state's witnesses, and asked the jury to send a message to the community by finding the appellant guilty.
There was no objection to these comments in the prosecutor's closing argument until the whole argument had been made to the jury. At the end of the argument, the sole objection was that the prosecutor had commented on the appellant's right to remain silent. Thus, any issues concerning the other comments are not preserved for appellate review because they are raised for the first time on appeal. Linville v. State, 634 So.2d 601
(Ala.Cr.App. 1993).
The prosecutor made the following argument in closing:
 "Everybody has their duties in a trial, and your duties are about to begin as far as the important part. And the judge has conducted the trial in an orderly and a proper fashion. He has allowed everybody to have their say, either before the jury or outside the jury, and he has not conducted himself in any improper manner. And the attorneys, and I'm sure you also, appreciate that.
 "Where do we start? I think the first way to start is to say the end of their testimony began with the credibility attack on Stevie Ponder, and I think that is probably the best place to begin. You first have to decide if he is credible or not credible. You say if he's credible, then you would evaluate all of his testimony along with all the other testimony. If you say he is not credible, then I think you have to disregard all of his testimony.
 "What I'm saying is I don't think you can pick and choose. Say, when he testified for the state he was not credible, but everything he said in favor of the defendant, then he is credible, because it's all a continuing event. The stresses that were on him at one time would have been on him throughout the entire ordeal. So I think you either say we believe him or we don't believe him.
 "Let's approach it in the first fashion and say you don't believe him, you disregard his entire testimony. If you approach it in that fashion it simplifies your deliberations considerably, because the only one that has testified as to the elements of their defense, as a practical matter, is Stevie, the only testimony that has come to you from the stand.
 "He testified about the events out there at the pond where the murders took place. He's the only one that can testify to those events. He's the only one that can testify as to the fight or the argument that took place in the car. He's the only one that can testify as to intoxication."
The standard used to evaluate prosecutor's comments made in closing argument is set forth by the United States Supreme Court in Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144 (1986). The United States Supreme Court stated:
 "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' Darden v. Wainwright, 699 F.2d [1031] 1031 at 1036 [(1983)]. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1974)."
477 U.S. at 181, 106 S.Ct. at 2471, 91 L.Ed.2d at 157.
As this court further stated in Payne v. State, 683 So.2d 440
(Ala.Cr.App. 1995):
 "In Windsor v. State, 683 So.2d 1023-24 (Ala. 1994), the Alabama Supreme Court addressed the standard for reviewing whether a comment is a comment on an accused's failure to testify, as follows:
 " 'As this Court recently held in Ex parte Musgrove, 638 So.2d 1360 (Ala. 1993), "When an accused contends that a prosecutor has made improper comments during a closing argument, the statements at issue must be viewed in the context of the evidence presented in *Page 287 
the case and the entire closing arguments made to the jury. . . ." 638 So.2d at 1368. . . .
" '. . . .
 " 'Alabama, by statute, specifically protects the privilege against self-incrimination from comment by the prosecution. § 12-21-200, Ala. Code 1975. A prosecutor must be extremely careful not to overstep the mark or to break with the established protocol regarding statements about that privilege. Musgrove, supra. To improperly comment on that privilege would be a clear violation of the defendant's rights under Article I, § 6, Ala. Const. 1901, as well as the rights protected by the Fifth Amendment as that Amendment is incorporated into the Fourteenth Amendment to the United States Constitution.
 " 'In Ex parte Wilson, 571 So.2d 1251, 1261
(Ala. 1990), this Court cited the standard endorsed by the United States Court of Appeals for the Eleventh Circuit:
 " ' "[A] statement by a prosecutor is improper if it was manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the ailure of the accused to testify." Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984).' "
683 So.2d at 447-448.
A similar argument was made by the prosecution in closing argument in Dill v. State, 600 So.2d 343, 355
(Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993). In Dill the testifying witness was the only witness in a car with the victim and the defendant. The prosecution stated that the state's witness was the "only one" from whom the jurors had heard. This court held that this comment was not a comment on the defendant's failure to testify.
The similar remarks made here did not so infect the proceedings as to deny the appellant a fair trial.
 IV
The appellant contends that the trial court's jury instruction on reasonable doubt violated the holding of the United States Supreme Court in Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The appellant claims that a juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below reasonable doubt. The United States Supreme Court, in Cage, held that jury instructions that equated reasonable doubt with "grave uncertainty," "actual substantial doubt," and "moral certainty" violated the Fourteenth Amendment of the United States Constitution. In Victor v. Nebraska, 511 U.S. 1,114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Court modified its holding inCage and held that, while it does not condone the use of the words "grave uncertainty," "actual substantial doubt," and "moral certainty" in a reasonable doubt instruction, the use of these words alone will not automatically render the instruction unconstitutional, if the instruction as a whole correctly conveys the concept of reasonable doubt. In this case, the trial court gave the following instruction on reasonable doubt:
 "In Alabama the phrase is 'guilty beyond reasonable doubt'. Sometimes when trying to explain something like a reasonable doubt you end up confusing it more. It is one of those concepts that if you explain it, the more confusing it gets. But the law has some very specific things to say about reasonable doubt.
 "It may help you some to say that a reasonable doubt must be an actual doubt. A reasonable doubt is not a mere guess or surmise. A reasonable doubt is a doubt based on reason and logic, but not speculation. If after considering all of the evidence in this case, you have an abiding conviction of the truth of the charge, then the law says you are convinced beyond a reasonable doubt; it would be your duty to convict the defendant. *Page 288 
 "The reasonable doubt which would entitle the accused to an acquittal in this case is not a mere fanciful, vague, conjectural or speculative doubt. It is a reasonable doubt arising from the evidence or from part of the evidence or from a lack of evidence. It remains after a careful consideration of testimony, such as reasonable and fair-minded people would entertain under all the circumstances.
 "The state is not required to convince you of the defendant's guilt beyond all doubt and to a mathematical certainty or beyond a shadow of doubt, but simply beyond a reasonable doubt. If after considering and comparing all of the evidence in this case or lack of evidence, if your minds are left in such a condition that you cannot say you have an abiding conviction to a moral certainty of the defendant's guilt, then you are not convinced beyond a reasonable doubt and the defendant would be entitled to an acquittal.
 "You take that reasonable doubt standard and you take the presumption of innocence that I have talked about and you weigh the evidence that has been presented in this case against those, you must be convinced beyond a reasonable doubt of the defendant's guilt based on the evidence."
As this court stated in Coffey v. State, 581 So.2d 1266, 1267
(Ala.Cr.App. 1991), "when reviewing a charge to the jury, . . . we must evaluate the charge as a whole, to see if the contested part, when viewed with the remainder of the instructions, results in prejudice to the appellant." The definition of reasonable doubt given in this case, as a whole, correctly conveyed the concept to the jury and did not prejudice the appellant. See Mayberry v. State, 675 So.2d 502
(Ala.Cr.App. 1995), writ denied, 675 So.2d 504 (Ala. 1996). No error occurred here.
 V
The appellant contends that the trial court erred by improperly excusing certain prospective jurors. Specifically, he contends that the court violated § 12-16-60, Code of Alabama 1975, by excusing one prospective juror because she did not have an automobile and by excusing all prospective jurors over the age of 65. However, without addressing the merits of this issue, there is no indication in the record that the appellant objected to the court's excusing these prospective jurors for reasons of age or lack of access to an automobile. This issue was therefore not preserved for appellate review. Anderson v.State, 480 So.2d 64 (Ala.Cr.App. 1985).
 VI
The appellant next contends that the trial court erred by denying his challenge to strike a prospective juror for cause because he alleges the juror held views regarding alcohol intoxication that impaired her ability to follow the court's jury instructions. The record indicates that the following exchanges occurred during voir dire examination:
 "MR. KNIGHT [defense counsel]: [M.C.], it's been a while ago so I hope I state this correctly. But the question that Fess asked to the entire panel was if the defendant — if the evidence showed that he was intoxicated to a point where . . . he could not form the specific intent to commit a crime such as capital murder, then he could be found guilty of a lesser crime, murder or manslaughter. And I think you had initially responded that you had a problem, because of the alcohol, in finding him guilty or not guilty of a lesser charge. "PROSPECTIVE JUROR [M.C.]: I don't think the alcohol would excuse — I think if you do a crime you should pay for it regardless if you were drunk or if you were — I mean I don't think that should justify your punishment, like in the State of Alabama you used to could be drunk and drive and kill somebody and there was nothing done.
 "But even in the State of Alabama now, if you're drinking and driving you could be charged with murder. I think the law itself is beginning to respect the fact that even though you're drunk you can't do whatever you want to and because you were drunk be excused. That's the only problem I would have.
 "MR. KNIGHT: I think the judge will tell you that intoxication is not a defense to a crime. *Page 289 
 "PROSPECTIVE JUROR [M.C.]: That's the only objection I would have that if, say, 'Hey, I did this crime but I was drinking,' so you don't pay for it.
 "MR. ST. JOHN [defense counsel]: You don't believe that the fact is the intoxication ought to ever change the result of his trial?
 "PROSPECTIVE JUROR [M.C.]: I think he should be punished if he's convicted even though he was drunk, yes, even though he was drunk.
 "MR. KNIGHT: If the evidence showed that he was intoxicated to a point that it affected his ability to discern between right and wrong, could you then come back with a lesser included offense other than capital murder?
 "PROSPECTIVE JUROR [M.C.]: If the evidence showed that, but I don't think we should get away with [a] crime just because we're intoxicated. That's my point. "MR. BROOKS [prosecutor]: May I ask her a question, Your Honor?
"THE COURT: Yes, sir.
 "MR. BROOKS: [M.C.], if the facts in the case indicated that Mr. Ponder was intoxicated, voluntarily intoxicated to the point that he was in a stupification or mania or didn't even know where he was based on the intoxication, and the judge told you that if you found, based on the facts that he was intoxicated to the point and that that could remove his intent to commit a murder, and you found that based on the facts, could you follow the judge's orders if you clearly, in your conscious, believed that be the case and convict him of a lesser included offense?
"PROSPECTIVE JUROR [M.C.]: I think so."
The prospective juror's answers indicated that, although she was opposed to intoxication as a complete defense or as an excuse for a crime, she could follow the court's instructions and take the fact that the defendant was intoxicated into consideration as negating an intent to commit the offense of murder.
This court stated the standard for reviewing a trial court's refusal to strike a juror for cause in Perryman v. State,558 So.2d 972 (Ala.Cr.App. 1989):
 ". . . [T]he finding of the trial judge is given great weight in considering the voir dire of the jury venire. Thomas v. State, 539 So.2d 375, 388 Ala. Cr. App. 1988), aff'd, 539 So.2d 399 (Ala. 1988). '[T]he finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror, taken as a whole, he entertained a fixed opinion which would bias his verdict.' (Emphasis added [in Perryman].) Nobis
[v. State], 401 So.2d [191] at 197 [(Ala.Cr.App), cert. denied, 401 So.2d 204 (Ala. 1981)]. Thus, even though a prospective juror admits to a potential bias, if further voir dire examination reveals that the juror in question can and will base his decision on the evidence alone, then a trial judge's refusal to grant a motion to strike for cause is not error."
558 So.2d at 977.
Because the juror's answers, taken as a whole, indicated that she could follow the trial court's instructions, the trial court did not err in denying the appellant's motion to dismiss this prospective juror for cause.
 VII
The appellant next contends that the trial court should have granted his motion for a change of venue, which alleged that extensive pretrial publicity in Cullman County prevented the appellant from getting a fair trial there. The appellant produced exhibits at trial in support of his motion. There were articles in the Cullman Times and The Birmingham News that reported the killings and described them as having been committed "execution style." In addition, the appellant contends that because 29 of the prospective jurors stated during voir dire examination that they had heard or read about the case the court erred in denying his motion for a change of venue.
Only 1 of the 29 prospective jurors who stated during voir dire examination that they had heard of the case indicated that she could not be impartial and that she could not put aside any information about the case learned from an outside source in deciding *Page 290 
the case. This prospective juror was struck. All 28 other prospective jurors stated that they remembered no specifics about the case and that they could base a verdict solely on the facts elicited during trial.
The Alabama Supreme Court has issued explicit guidelines for a trial court to use in determining whether to grant a motion for a change of venue based on pretrial publicity.
 "In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Cr.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298
(Ala.Cr.App. 1978). As the Supreme Court explained in Irvin v. Dowd 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589
(1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Cr.App. 1978)."
Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985), cert. denied,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
The trial court did not err in denying the appellant's motion for a change of venue because it adequately determined through voir dire examination that the prospective jurors were not biased by pretrial publicity.
 VIII
The appellant next contends that the trial court erred by denying his motion requesting individual voir dire examination of prospective jurors. This court stated the general rule regarding when to allow individual voir dire examination inWaldrop v. State, 462 So.2d 1021 (Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985).
 "As a general rule, it is within the trial court's discretion to allow individual voir dire of prospective jurors. . . . The mere fact that prospective jurors know something about a case, at the time of empaneling, is not unusual, nor is it sufficient to invoke individual voir dire where the trial court takes the necessary steps to ensure that the accused receives a fair trial by a panel of impartial and indifferent jurors."
462 So.2d at 1026.
The trial court allowed the prospective jurors to be questioned in groups. Prospective jurors who answered certain questions in the affirmative were then questioned individually. The trial court did not abuse its discretion by proceeding in this manner and in denying the appellant's motion for individual voir dire examination.
 IX
The appellant next contends that the trial court erred in denying his motion to suppress his confession. While incarcerated before trial, the appellant made statements in which he confessed to the crimes charged in this case. The appellant argues that these statements were involuntary because, he says, he was taking antidepressant medication when he gave the statement.
As stated in McElroy's Alabama Evidence:
 "The general rule is that a confession is not to be automatically excluded simply because the accused was under the influence of drugs at the time he made it. Unless the facts show an inability to know and remember those matters related in the *Page 291 
confession, an addiction to drugs does not render the accused's confession inadmissible. The fact that the accused was under the influence of drugs, however, is to be considered, along with other factors, in determining whether his confession was voluntary."
C. Gamble, McElroy's Alabama Evidence § 200.14(4) (5th ed. 1996). We must evaluate the totality of the circumstances surrounding the confession. Nelson v. State, 398 So.2d 421, 423
(Ala.Cr.App. 1981).
The appellant's inculpatory statements were made to other inmates in the county jail. See Lippold v. State,365 So.2d 1015 (Ala.Cr.App. 1978), writ. denied, 365 So.2d 1022
(Ala. 1979). There is no evidence that the appellant was induced to make the statements, that he was threatened in any way, or that any alleged drugs that he ingested rendered his confession involuntary. The trial court did not err in receiving the confession into evidence. Nelson, supra.
 X
The appellant further contends that the security measures used at his trial exceeded necessary and ordinary precautions and thereby prejudiced him before the jury. The appellant did not object at trial to the security measures. Furthermore, the appellant does not discuss any specific security measures taken that he alleges prejudiced him. He refers only to the following comment by the trial court judge to potential jurors:
 "Good morning, ladies and gentlemen. Have a seat. The first thing I would like to do is offer an apology for the security measures that we have. The security is as much for you as it is for anybody else. We want to make sure no one is hurt while they're here serving their jury duty."
The appellant contends that the security measures taken, combined with this statement by the trial court and the pretrial publicity, prejudiced the appellant and violated his constitutional rights.
 "The trial court can best determine what security measures are necessary. 'Within constitutional limits, great weight must be accorded the discretion of the trial court. The trial judge is responsible for maintaining order in his courtroom. He understands infinitely better than we what is necessary to perform his duty.' Goodwin v. State, 495 So.2d 731, 733
(Ala.Cr.App. 1986)."
Windsor v. State, 683 So.2d 1027 (Ala.Cr.App. 1994).
The appellant has not shown that the trial court abused its discretion with regard to security measures taken during the trial. The trial court did not err here.
For the reasons discussed in Part I of this opinion, this cause is remanded to the Circuit Court for Cullman County for resentencing. Due return should be filed in this court no later than 21 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.